OPINION OF THE COURT
Dillon, J.P.
The petitioner, Simcha Felder, commenced this proceeding in the Supreme Court, Kings County, inter alia, to invalidate a petition designating David Storobin as a candidate for the nomination of the Republican Party as its candidate for the public office of the New York State Senator for the 17th Senatorial District. Felder’s petition alleged, among other things, that Storobin had committed fraud in witnessing signatures and that Storobin’s designating petition was otherwise permeated with fraud.
One thousand valid signatures were required for Storobin’s designating petition (see Election Law § 6-136 [2] [h]). Storobin’s designating petition contained in excess of 2,000 signatures, more than twice the number required. The Board of Elections in the City of New York (hereinafter the Board of Elections) rejected objections that were filed, on the ground that the objections were not properly served.
After Storobin’s motion to dismiss the petition to invalidate the designating petition was denied in an order dated August *14 10, 2012, Storobin filed an answer containing a counterclaim seeking to validate the designating petition. Felder filed a reply to the counterclaim, alleging that it was not timely verified. A special referee conducted a line-by-line examination of the designating petition, and concluded that it contained a sufficient number of valid and qualifying signatures. The Supreme Court then conducted a hearing, inter alia, on the invalidation claim, resulting in the final order appealed from, entered August 13, 2012, which denied the petition to invalidate and, in effect, dismissed the proceeding. Specifically, the Supreme Court denied the petition to invalidate, on the ground that Felder failed to establish, by clear and convincing evidence, that Storobin participated in or was chargeable with knowledge of fraudulent activity. The Supreme Court did not expressly address the counterclaim seeking to validate the designating petition. Felder appeals from the final order, and Storobin separately appeals from the order dated August 10, 2012. We dismiss the appeal from the order dated August 10, 2012, and affirm the final order.
I. The Issak Signature and Address
One set of issues at the hearing concerned Storobin’s witnessing of the designating signature of Michail Issak on the designating petition. The signature is visually difficult to decipher, and the residential address inscribed next to the signature has been shown to be that of Hilda Danger, who died two years prior to the date of the designating petition. Storobin testified at the hearing that, after personally witnessing the signature of Issak, Storobin later filled out residential address information for the signatures he had obtained. In Issak’s case, Storobin could not decipher Issak’s signature, except for what he believed to be an “H” in “Michail” and, upon reviewing voter lists and through a process of elimination, he mistakenly placed Hilda Danger’s name and address next to Issak’s signature, believing the information to be accurate at the time. Issak testified at the hearing that he did, in fact, sign the designating petition for Storobin, and identified his own signature on the document. The Supreme Court found Storobin’s testimony as to the inscription of Danger’s residential address to be credible. The Supreme Court concluded that, while the circumstances surrounding the placement of Danger’s name and residential address on the designating petition may have revealed carelessness on Storobin’s part, that conduct did not constitute intentional fraud.
*15 II. Five Alleged Forged Signatures
Felder alleged that five signatures witnessed by Storobin were actually forged: those of Anatoliy Smolyanskiy, Edith Garcia, Arnaldo Garcia, Carina Tretyakov, and Lyudmila Tretyakov. Jeffrey Luber, a handwriting expert called as a witness by Felder, testified that each of these five signatures was forged, based upon his comparison of the designating petition with the voter registration records maintained by the Board of Elections. He described the differences in signatures as great and glaring. With respect to four of the signatories, the examplar signatures from the Board of Elections were 28 years old, 20 years old, 19 years old, and 12 years old, respectively. Luber conceded in his testimony that a person’s signature may change with time and age. Felder did not call as witnesses any of the voters in question, and did not produce comparative signature evidence more recent than that set forth in the records obtained from the Board of Elections.
Storobin called Smolyanskiy, the fifth signatory, as a witness. Smolyanskiy identified his signature on the designating petition, and recalled signing his name to it in the presence of Storobin and another person. Storobin testified that he personally obtained the signatures at issue. The Supreme Court credited Smolyanskiy’s and Storobin’s testimony as to Smolyanskiy’s signature.
As to the remaining four signatures, the Supreme Court found Luber’s testimony insufficient to meet the burden of proof for fraud, particularly in light of, inter alia, the significant gaps in time between the dates of the voters’ examplar signatures from the Board of Elections and the signatures on the designating petition. The Supreme Court also found the testimony of Storobin to be credible.
III. Legal Analysis
A candidate’s designating petition will be invalidated on the ground of fraud if there is a showing that the entire petition is permeated with fraud (see Matter of Volino v Calvi, 87 AD3d 657, 658 [2011]; Matter of Harris v Duran, 76 AD3d 658, 659 [2010]; Matter of Drace v Sayegh, 43 AD3d 481 [2007]). However, where a candidate’s own knowledge or activities are at issue, candidates are held to a higher standard under the Election Law than noncandidates. Absent permeation with fraud, a designating petition may be invalidated where the candidate has participated in or is chargeable with knowledge of the fraud *16 (see Matter of Lavine v Imbroto, 98 AD3d 620 [2012]; Matter of Volino v Calvi, 87 AD3d at 658; Matter of Leonard v Pradhan, 286 AD2d 459 [2001]), even if there is a sufficient number of nonfraudulent signatures on the remainder of the designating petition (see Matter of Tapper v Sampel, 54 AD3d 435 [2008]; Matter of Drace v Sayegh, 43 AD3d at 482). However, a single instance of fraud by a candidate does not necessarily require the invalidation of an entire otherwise-sufficient designating petition as a matter of law (see Matter of Perez v Galarza, 21 AD3d 508, 509 [2005] [denial of petition to invalidate a designating petition where only one witness testified that the candidate was not present to witness her designating signature]).
The Supreme Court applied the proper evidentiary standard for fraud, that of clear and convincing evidence (see Matter of Lavine v Imbroto, 98 AD3d at 620; Matter of Finn v Sherwood, 87 AD3d 1044, 1045 [2011]; Matter of Testa v DeVaul, 65 AD3d 651 [2009]; Matter of Robinson v Edwards, 54 AD3d 682, 683 [2008]; Matter of Hennessey v DiCarlo, 21 AD3d 505, 506 [2005]).
We are not persuaded that the existence of a seemingly illegible signature of one person upon a designating petition, alongside a name and residential address of another person, meets Felder’s prima facie burden with respect to a showing of fraud, as the documentary evidence fails to establish by clear and convincing evidence that the single irregularity was a product of “knowing” or “intentional” fraud on the part of the witnessing candidate. It has been understood since at least the time of Blackstone that fraud requires proof of an intent to deceive (see 3 William Blackstone, Commentaries on the Laws of England at 716 n 6 [George Chase, 3d ed American Students’ Blackstone 1894]). The requirement that proof of wrongful intent is necessary to sustain a fraud cause of action is clearly ensconced in New York law (see Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112, 119 [1969]; Smith v Ameriquest Mtge. Co., 60 AD3d 1037, 1039 [2009]; Cash v Titan Fin. Servs., Inc., 58 AD3d 785, 788 [2009]; Selinger Enters., Inc. v Cassuto, 50 AD3d 766, 767 [2008]; Heaven v McGowan, 40 AD3d 583, 584 [2007]; Watson v Pascal, 27 AD3d 459 [2006]; Leño v DePasquale, 18 AD3d 514, 515 [2005]). Felder failed to establish the requisite wrongful intent merely by adducing evidence of Storobin’s careless and erroneous placement of Danger’s name and address upon the designating petition.
In our view, our dissenting colleague’s analysis advocates a new, strict liability rule to be applied against candidates who *17 make unintentional or sloppy errors in their witness statements. The problem with any such strict rule is that it fails to account for the basic and necessary elements of fraud that must be established by clear and convincing evidence to warrant the invalidation of a candidate’s entire designating petition. Moreover, such a rule would be inconsistent with the case law of this Judicial Department that forgives good-faith error by candidates in connection with the execution of their witness statements (see Matter of Bonner v Negron, 87 AD3d 737, 739-740 [2011]; Matter of McHugh v Comella, 307 AD2d 1069, 1070 [2003]).
Even had Felder met his prima facie burden, Issak’s testimony identifying his signature on the designating petition, and Storobin’s testimony explaining the careless but good-faith manner in which the incorrect address was placed upon the document, overcame Felder’s proof, as the Supreme Court found the combined and consistent testimony of Issak and Storobin to be credible.
The Supreme Court’s determination regarding the presence of Danger’s name and residential address alongside Issak’s signature is based upon its appropriate assessment of witness credibility. A hearing court’s assessment of the credibility of witnesses is entitled to deference, as that court had the advantage of hearing and seeing the witnesses (see Matter of Finn v Sherwood, 87 AD3d at 1045; Matter of Harris v Duran, 76 AD3d at 659; Matter of Drace v Sayegh, 43 AD3d at 482; Matter of Morini v Scannapieco, 286 AD2d 459 [2001]; Matter of Walkes v Farrakhan, 286 AD2d 464 [2001]; McGuirk v Mugs Pub, 250 AD2d 824 [1998]). Here, the circumstances surrounding the presence of Danger’s name and residential address on the designating petition, while unusual, are also plausible if the testimony of the voter, Issak, and of the candidate, Storobin, is found to be credible. Issak’s signature was authentic, and there is no evidence that Storobin failed to personally witness its subscription (see Matter of Haskell v Gargiulo, 51 NY2d 747 [1980]; Matter of Bonner v Negron, 87 AD3d at 738; Matter of Cirillo v Gardiner, 65 AD3d 638, 639 [2009]). To the extent that our dissenting colleague believes that there is a sufficient basis for reaching an entirely different explanation for the presence of Danger’s name and residential address upon the designating petition, such explanation, in our view, is speculative and conjectural, and falls short of satisfying the clear and convincing evidence standard that must be applied by the courts on both the trial and appellate levels. If, as found by the Supreme *18 Court, the insertion of Danger’s name and residential address on the designating petition was a product of mere carelessness, and was not an intentional misrepresentation by the candidate, then the Supreme Court properly concluded that Storobin did not engage in such knowing and intentional fraud as would warrant the invalidation of his entire designating petition.
As to the remaining contested signatures, Luber’s expert testimony that Smolyanskiy’s signature was forged, followed by Smolyanskiy’s testimony that the designating petition had, in fact, been signed by him, eviscerated Luber’s credibility as an expert witness on the issue of the authenticity of Smolyanskiy’s signature, and allowed the Supreme Court to find Luber’s testimony to be “unconvincing and questionable, at best” as to the remaining designating signatures as well. Again, we defer to the Supreme Court’s assessment that Luber’s testimony was not credible.
Upon discounting the expert handwriting testimony, the Supreme Court properly examined and compared the signatures on the designating petition to the voters’ signatures on file with the Board of Elections. In our view, the designating signatures of Edith Garcia and Lyudmila Tretyakov match the signatures on their voter registration cards, and the designating signature of Carina Tretyakov, while appearing incomplete, is consistent with the signature on her voter card to the extent that the portion of the designating signature can be viewed. The designating signature of Arnaldo Garcia arguably reflects differences with the signature on his registration card, but, as noted by the Supreme Court, all of the contested signatures were placed upon Storobin’s designating petition many years after the voters’ registration forms were completed and signed, and, in Arnaldo Garcia’s case, a full two decades later. Even if any signature were written by someone other than the identified voter, there is no evidence that Storobin had actual knowledge of such circumstances so as to allow us to conclude that he personally engaged in fraud. The documentary signature evidence before the Supreme Court, once the expert witness testimony to the contrary is discounted, fails to satisfy Felder’s prima facie burden of establishing, by clear and convincing evidence, that any of the contested signatures are fraudulent (see Matter of Bonner v Negron, 87 AD3d at 739; see also Matter of Cirillo v Gardiner, 65 AD3d at 639).
*19 IV The Team Method of Signature Gathering
Our dissenting colleague suggests that fraud arose in Storobin’s signature-gathering process because of the manner in which the “team method” was utilized in gathering various signatures for Storobin’s designating petition. The team method, however, has been judicially recognized as valid (see Matter of Rodriguez v Harris, 51 NY2d 737, 738-739 [1980, Fuchsberg, J., concurring]). Storobin’s only testimony regarding the team method was that members of the team, accompanied by the candidate, were either “getting” or “witnessing” signatures. No further testimony or other evidence was ever developed on this point, and Storobin’s testimony hardly constitutes a concession or evidence that he participated in any fraudulent conduct.
V Remaining Issues
The Supreme Court did not err in excluding testimony regarding allegedly fraudulent signatures that were not identified in Felder’s pleading (see CPLR 3016 [b]; see generally Matter of Belak v Rossi, 96 AD2d 1011 [1983]).
The appeal from the order dated August 10, 2012, must be dismissed, as the right of direct appeal therefrom terminated with the entry of the final order in the proceeding (see Matter of Aho, 39 NY2d 241, 248 [1976]; Matter of Ragusa v Ognibene, 92 AD3d 683, 683 [2012]; Matter of Myers v Baisley, 65 AD3d 649, 649-650 [2009]; Matter of Rettaliata-Tepe v Katz, 46 AD3d 850, 851 [2007]). Although the issues raised on Storobin’s appeal from the order dated August 10, 2012, are brought up for review on Felder’s separate appeal from the final order entered August 13, 2012 (see Matter of Rettaliata-Tepe v Katz, 46 AD3d at 851), those issues have been rendered academic in light of our determination of the appeal from the final order.
Felder’s remaining contentions are without merit.
Accordingly, in light of the foregoing, the Supreme Court properly denied the petition to invalidate Storobin’s designating petition and, in effect, dismissed the proceeding.
We reject Storobin’s request to assess costs and sanctions against Felder for prosecuting a frivolous appeal, as the circumstances do not warrant such action.
The appeal from the order dated August 10, 2012, is dismissed, and the final order entered August 13, 2012, is affirmed.